UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JEAN L DORVAL,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**STATE OF NEW JERSEY, TREASURY DEPARTMENT, THOMAS KOCZUR, in his individual and official capacity, JOHN FURDA, in his individual and official capacity, JOHN DOES 1–5, and JOHN DOES 6–10,**<br><br>    **Defendants.** | Civ. No. 20-05997 (KM) (CLW)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

    Jean Dorval served 24 years in prison before he was released after post-conviction review. Now he sues, among others, a detective involved in the investigation, John Furda, for constitutional violations. Detective Furda moves to dismiss. (DE 3.)[1] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**. In essence, I hold that I cannot grant qualified immunity based on the face of the Complaint. The issue of whether it should have been apparent to the officer that probable cause was lacking (whether because of precedent on point, or the clear implication of then-existing law) will require some factual development.

---

[1]     Certain citations to the record are abbreviated as follows:

    DE = docket entry

    Compl. = Complaint (DE 1)

    Mot. = Brief in Support of Defendant Furda's Motion to Dismiss (DE 3-1)

    Opp. = Mr. Dorval's Brief in Opposition to Defendant's Motion to Dismiss (DE 9)

    Reply = Reply Brief in Support of Defendant Furda's Motion to Dismiss (DE 12)

I.   **BACKGROUND**

   A. **Facts**

      1. **The 1994 Crime**

At 3 A.M. on March 20, 1994, police were called to a crime scene in Elizabeth, New Jersey. (Compl. at 45.)² Witnesses told officers that seven individuals in two cars had driven up, shot Richard Jerry Myers (who died from the gunshot) and Karon Henderson, and fled. (*Id.* at 24.) Some witnesses were taken to the police station where Detective Furda and Officer Thomas Koczur took their statements. (*Id.* at 45.) Witnesses reported that one of the cars was a black Acura Legend and that the perpetrators were Haitian. (*Id.* at 24.)

After obtaining these statements, Detective Furda and Officer Koczur interviewed, for unspecified reasons, an inmate, L.M., at a county jail "under intimidating and coercive circumstances." (*Id.* at 46.) L.M. said that he knew an individual later confirmed to be Mr. Dorval had a black Acura Legend and was friends with individuals nicknamed "Rene" and "Mac." (*Id.*) The officers learned that the real name of "Rene" was Duquene Pierre. (*Id.*)

After the L.M. interview, one witness was shown a photo array and identified Macgoohan Romelus as a participant. (*Id.*) The witness stated that Romelus had exited from one car, approached her, put a gun to her head, and threatened her life. (*Id.* at 48.) Romelus was arrested but denied any involvement. (*Id.* at 47.)

Three weeks later, another inmate, R.S.H., contacted prosecutors to speak about the crime. (*Id.*) Detective Furda and Officer Koczur met with R.S.H. and "wrongfully and improperly discussed details of the crimes" with him "knowing that he would convey" them to Romelus. (*Id.*) The officers also told R.S.H. that since Romelus now had the right to counsel, they could not speak with Romelus unless he initiated contact. (*Id.*) So Detective Furda provided his telephone number to R.S.H. to give to Romelus. (*Id.*)

---

²   Because the Complaint renumbers its paragraphs for each section or count, I cite to the relevant page number.

The next day, Romelus called the officers, and they met with him. (*Id.* at 48.) Although the officers knew that Romelus was a "main actor," they provided information to him regarding the crime and suggested Mr. Dorval's and Pierre's names as participants. (*Id.*) As a result, and due to "coercion" and "threats," Romelus gave a statement implicating Mr. Dorval and Pierre. (*Id.*) This statement contradicted Romelus's previous statement that he was not involved with the crime. (*Id.* at 49.) Likewise, Romelus gave a third and final statement a month later again denying being at the scene. (*Id.*)

Based on Romelus's statements, the officers obtained a warrant for Mr. Dorval's arrest. (*Id.*; *see also id.* at 7.) Upon his arrest, Mr. Dorval told police that he and Pierre were on a road trip to Florida the night of the crime. (*Id.* at 15.) Indeed, they had evidence to corroborate this alibi, some of which police discovered. (*Id.* at 13–16.)

### 2. Legal Proceedings

Despite the alibi, prosecutors pursued the case. At trial, they mostly relied on additional witnesses they procured to place Mr. Dorval and Pierre at the scene. (*Id.* at 8, 10.) Mr. Dorval and Pierre were convicted and sentenced to decades of imprisonment. (*Id.* at 17.)

While imprisoned, Mr. Dorval and Pierre sought appellate and then post-conviction review. (*Id.* at 17.) Mr. Dorval eventually abandoned his efforts, but Pierre persisted. (*Id.*) The New Jersey Supreme Court reversed Pierre's convictions and ordered a new trial. (*Id.* at 18; *see State v. Pierre*, 127 A.3d 1260 (2015).) At the retrial, witnesses admitted that their identifications had been incorrect. (*Id.*) Without these witnesses, the court granted a motion for acquittal. (*Id.* at 19.)

Despite Pierre's acquittal, prosecutors refused to reopen Mr. Dorval's case. (*Id.*) So Mr. Dorval again applied for post-conviction relief, and eventually the indictment was dismissed. (*Id.* at 19–20). He was released in 2020. (*Id.* at 20.)

### B. Procedural History

Mr. Dorval brought an action in New Jersey Superior Court to recover damages for his wrongful prosecution and imprisonment, which was removed to this Court. (DE 1.) As relevant here, the Complaint asserts against Detective Furda a claim under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2, for violations of the New Jersey Constitution (Count 5); a 42 U.S.C. § 1983 claim for violations of the U.S. Constitution (Count 6); a common-law malicious prosecution claim (Count 7); and a 42 U.S.C. § 1985(3) conspiracy claim (also asserted against Officer Koczur). (Compl. at 45–59.) The NJCRA and § 1983 claims are asserted against Detective Furda in both his individual and official capacities. (*Id.*) The Complaint seeks only damages. (*See id.*) Detective Furda moves to dismiss the claims against him. (Mot.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations. Still, the pleading must contain "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570. That standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). The facts in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

**III.    DISCUSSION**

Detective Furda moves to dismiss (A) the individual-capacity § 1983 and NJCRA claims because he enjoys qualified immunity (I disagree), (B) the official-capacity § 1983 and NJCRA claims because official-capacity suits for damages are not allowed (I agree), (C) the malicious prosecution claim because malice is not alleged and he has immunity under state law (I disagree), and (D) the § 1985 claim because no discrimination is alleged (I agree).

### A. Individual-Capacity Claims

Detective Furda asserts qualified immunity for the individual-capacity § 1983 and NJCRA claims against him. (Mot. at 10.) Qualified immunity shields officials from liability unless they violated clearly established rights. *Williams v. City of York*, 967 F.3d 252, 258 (3d Cir. 2020) (§ 1983); *Morillo v. Torres*, 117 A.3d 1206, 1213 (N.J. 2015) (NJCRA). Thus, a motion to dismiss may be granted where (1) no constitutional violation is alleged, or (2) the right was not clearly established. *See George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013).

#### 1. Constitutional Violation

First, I determine whether Mr. Dorval has alleged a constitutional violation. The Complaint alleges that Detective Furda violated Mr. Dorval's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution (Compl. at 51–52) and his rights under the New Jersey Constitution (*id.* at 49). In response, Detective Furda does not make specific arguments about these rights. Instead, he focuses on the second prong of qualified immunity. (*See infra*; Mot. at 10–14.) Mr. Dorval focuses on the issue of whether the Fourth Amendment was violated when Detective Furda's investigation led to an arrest and prosecution without probable cause. (Opp. at 9.) I will view qualified immunity through the lens of such a Fourth Amendment claim.[3]

---

[3]    Mr. Dorval does not frame his claim based on a specific common law tort. Although Fourth Amendment claims are often brought through the vehicle of tort law,

5

"[T]he Fourth Amendment forbids a detention without probable cause." *Halsey v. Pfeiffer*, 750 F.3d 273, 291 (3d Cir. 2014). Investigators are liable for a Fourth Amendment violation if they "influenced or participated in the decision to institute criminal proceedings" lacking in probable cause. *Id.* at 297. The Complaint alleges that Mr. Dorval's arrest was based on the evidence Detective Furda and Officer Koczur developed (*e.g.*, Compl. at 49), so Detective Furda is potentially liable.[4]

So the issue becomes whether there was probable cause to arrest Mr. Dorval. Probable cause means "a fair probability that the person committed the crime." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quotation marks and citation omitted). I look at "the facts and circumstances" Detective Furda knew at the time and ask whether a "reasonable person" would believe that Mr. Dorval committed the murders. *Id.* at 200. Probable cause must be based on

---

it is permissible—and often simpler—to analyze such claims as "plain-vanilla Fourth Amendment claim[s]," as I will do here. *Tlapanco v. Elges*, 969 F.3d 638, 658 (6th Cir. 2020) (Thapur, J., concurring) (citation omitted); *Pagán-González v. Moreno*, 919 F.3d 582, 608 (1st Cir. 2019) (Barron, J., concurring) (same); *see Manuel v. City of Joliet*, 137 S. Ct. 911, 921 (2017) ("Common-law principles are meant to guide rather than to control the definition of § 1983 claims . . . .").

[4]  When an arrest is made pursuant to a warrant, the analysis differs. The plaintiff must show that (1) officers knowingly, deliberately, or recklessly made false statements or omissions when applying for the warrant, and (2) such statements or omissions were necessary to the finding of probable cause. *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016). The second step requires reconstructing the warrant without the misrepresentations and determining if probable cause still existed. *Id.*

The Complaint alleges in passing that Mr. Dorval was arrested pursuant to an arrest warrant supported mostly by Romelus's statements. (Compl. at 7, 28.) But there are no allegations about what precisely was in the warrant application, and no party has provided the application. Further, the parties do not argue the probable cause issue based on the invalid-warrant standard.

The Third Circuit has explained that the test cannot be applied without the warrant application itself. *Noviho v. Lancaster Cnty.*, 683 F. App'x 160, 164–65 (3d Cir. 2017). Given *Noviho,* and the failure of both parties to present the warrant issue, I will analyze probable cause based on the usual test. I note later, however, that the warrant-based analysis would be unlikely to produce a different result. *See* p.11 n.9, *infra.*

"reasonably trustworthy information," *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)), and consider exculpatory facts, *Harvard*, 973 F.3d at 200. I discuss the facts possessed by Detective Furda in turn and then assess their cumulative effect.[5]

### a. Romelus's Statements

The driving force behind the probable cause determination was Romelus's accusation. (*E.g.*, Compl. at 49.) There are three reasons that this accusation did not meet the standard of "reasonably trustworthy information." *Zimmerman*, 873 F.3d at 418.

First, and most pertinently, the Complaint alleges that Romelus's accusation was coerced and false. (Compl. at 48.) The Third Circuit and other courts have held that coerced statements cannot be used to support probable cause. *Halsey*, 750 F.3d at 301; *Gilliam v. Sealey*, 932 F.3d 216, 234 (4th Cir. 2019); *Wilkins v. DeReyes*, 528 F.3d 790, 806 (10th Cir. 2008); *Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F.3d 352, 358–60 (6th Cir. 1997), *cited favorably by Geness v. Cox*, 902 F.3d 344, 358 (3d Cir. 2018). Any officer, in 1994 or now, would be clearly aware that inculpatory testimony cannot constitutionally be planted in the witness's mind or, worse, coerced. That is the allegation here.

Although Detective Furda argues that the Complaint's allegation of coercion is too conclusory (Mot. at 13), he overlooks key factual allegations which I must take as true on a motion to dismiss. Namely, the Complaint alleges that Detective Furda (1) "provided information to Mr. Romelus regarding the incident," (2) "suggest[ed]" Mr. Dorval's name, and (3) circumvented Romelus's right to have counsel present during the interview. (Compl. at 47–48.) Those statements are sufficient allegations that Detective Furda sought to invite, elicit, or even coerce a fabricated statement from Romelus.[6]

---

[5]    I will not consider the alibi evidence because it came into investigators' possession post-arrest. (Compl. at 15.)

[6]    Even if these allegations fall short of showing coercion, they at least indicate that Romelus did not genuinely and organically accuse Mr. Dorval. In assessing whether an informant's or a witness's identification supported probable cause, I

7

Second, coercion aside, any accusation from Romelus was dubious because he had a clear motive to inculpate Mr. Dorval. This is common sense. *See Andrews v. Scuilli*, 853 F.3d 690, 704 (3d Cir. 2015) ("[P]robable cause is driven by common sense . . . ."). Detective Furda responds that the case law in this area largely concerns codefendants who confess to a crime and inculpate another in that confession.[7] Romelus, he says, was not an accomplice. (Reply at 4.) But Romelus was a suspect and an arrestee, implicated by virtue of a witness's testimony that he had emerged from one of the cars and threatened a person with a gun. He had a strong motive to wrongly accuse another to divert the investigation from himself, and thereafter to avoid the consequences of changing his story.

Third, Romelus's statements contradicted themselves and statements by witnesses. *Andrews*, 853 F.3d at 702 (glaring differences in witness testimony can negate probable cause). Romelus gave three statements. In two, he denied

---

consider their reliability and basis of knowledge. *Illinois v. Gates*, 462 U.S. 213, 233 (1983) (informant's "veracity," "reliability," and "basis of knowledge" are "relevant considerations"); *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000) (evidence that witness is unreliable undermines probable cause). So, at a minimum, because Detective Furda elicited the statements, Romelus's veracity and basis of knowledge are undermined.

[7]   I do not regard as pertinent, however, the *legal* issue of, *e.g.*, admission of a codefendant's confession in evidence, *see Bruton v. United States*, 391 U.S. 123, 135–36 (1968), or the question of whether the officers' indirect approach to Romelus violated Romelus's Sixth Amendment right to counsel, *see Michigan v. Jackson,* 475 U.S. 625, 632 (1986), *overruled on other grounds by Montejo v. Louisiana*, 556 U.S. 778 (2009).

Still, the Supreme Court has cited in a variety of contexts the commonsense proposition that statements by suspects or accused accomplices that inculpate another are inherently unreliable. *See, e.g., Williamson v. United States*, 512 U.S. 594, 607–08 (1994) (Ginsburg, J., concurring in part and concurring in the judgment) ("A person arrested in incriminating circumstances has a strong incentive to shift blame or downplay his own role in comparison with that of others . . . ."); *Lee v. Illinois*, 476 U.S. 530, 542 (1986) (statements by an accomplice that incriminate another are "presumptively unreliable" due to the obvious motive to "shift or spread blame, curry favor, avenge himself, or divert attention to another").

being at the scene (Compl. at 49), but in another, he said he was a bystander (*id.* at 48). Those accounts are irreconcilable, further calling into question his basis of knowledge. What is more, either account still contradicted one witness's statement that Romelus was a *participant* who threatened that witness. (*Id.*) *See Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477–78 (3d Cir. 2016) (discussing reliability factors of victim identifications). All said, the internal and external inconsistencies with Romelus's statements rendered them unreliable.

The allegation that Detective Furda elicited or coerced false testimony, corroborated by indications of unreliability, suffice to support a claim of lack of probable cause.

### b. Descriptions of the Perpetrators

Setting aside Romelus's statements, Detective Furda learned from witnesses that the perpetrator was Haitian and drove a black Acura Legend. Mr. Dorval fit that description. (Compl. at 24, 46.)

A match with the perpetrator's race/ethnicity and car, without more, is not sufficient to support probable cause. *Compare United States v. Kithcart*, 134 F.3d 529, 531–32 (3d Cir. 1998) (Alito, J.) (no probable cause when officer pulled over a black sports car with two Black men inside after a radio informed her that two Black males driving a black sports car had committed a robbery), *with United States v. Harple*, 202 F.3d 194, 197–98 (3d Cir. 1999) (Alito, J.) (probable cause existed when car and race matched description of arsonists *and*, in contrast to *Kithcart*, the perpetrators were stopped just blocks away from the fire). Even in *Kithcart*, the defendants' matching car was found somewhere near the crime scene in the time frame of the crime (though not near enough to support probable cause). 134 F.3d at 132. There was no such proximity here; the evidence established only that Mr. Dorval owned a black

9

Acura Legend.[8] Thus, the additional information in Detective Furda's possession did not itself rise to the level of probable cause.

### c. Totality

The question, then, is whether the totality of the information—the description of the perpetrator's race/ethnicity and car, plus Romelus's statements—furnished probable cause. *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (instructing that "the whole is often greater than the sum of its parts" when determining probable cause).

A reasonable officer could not conclude that a person committed a murder based on that very officer's elicitation of the statement from an untrustworthy accuser. Nor does the evidence get over the probable cause threshold because the accused and the perpetrator were of the same ethnicity/race and drove the same model car. The first piece of information is too incredible, and the second too vague. Although they may reinforce each other to some limited extent, *see Wesby*, 138 S. Ct. at 588, Detective Furda has pointed to no precedent—and I could locate none—endorsing such a set of facts as a sufficient basis for probable cause. *Cf. Smith v. Munday*, 848 F.3d 248, 253–54 (4th Cir. 2017) (no probable cause when informant told police that "'April Smith,' a skinny, black woman, sold him crack cocaine," and officers found, through a database, someone with that description). Further, although multiple witnesses claimed they saw the murders, they allegedly did not name Mr. Dorval. (Compl. at 46.) There were not enough credible facts to support a finding of probable cause to believe that Mr. Dorval participated in this murder and assault.

I stress, however, that this conclusion only flows from accepting the Complaint's allegations as true, as I must for present purposes. Probable cause here will turn on factual issues, *e.g.*, *whether* Romelus was coerced, *whether* an Acura Legend was a commonly owned car in 1994 in Elizabeth, and so on.

---

[8]   Again, I set aside the later-obtained evidence that Mr. Dorval, Pierre, and indeed the black Acura, were on the way to Florida at the time.

10

But for now, the immunity issue is presented in the context of a motion to dismiss, and my task is only to determine whether the Complaint's allegations "are sufficient as a matter of law to avoid an immunity defense." *Wiley v. City of Newark*, Civ. No. 16-2530, 2017 WL 4678202, at *3 (D.N.J. Oct. 16, 2017) (quoting *Scnrob v. Catterson*, 967 F.2d 929, 938 (3d Cir. 1992)). Factual development will be necessary before the question of qualified immunity can be fully resolved. *Id.* As I stated in a recent case, "I cannot rule that [Detective Furda] had probable cause for the arrest," or more accurately, "I cannot dismiss a claim that [he] did *not* have probable cause." *Saint-Jean v. County of Bergen*, Civ. No. 19-10680, 2020 WL 7693998, at *9 (D.N.J. Dec. 28, 2020). [9]

### 2. Clearly Established

Having concluded that the Complaint alleges a constitutional violation, I must determine whether "it would have been clear to a reasonable person that [his] conduct was unlawful." *Porter v. Pa. Dep't of Corrs.*, 974 F.3d 431, 449 (3d Cir. 2020) (citation omitted). To do so, I analyze whether the case law in 1994 (when Mr. Dorval was arrested) put Detective Furda on "fair notice" that he lacked probable cause. *Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d 416, 426 (3d Cir. 2020) (citation omitted). The case law must have placed that question "beyond debate." *Id.* (citation omitted).

To place the question beyond debate, the case law must be sufficiently specific. *Wesby*, 138 S. Ct. at 590. That is, there must either be "a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment" or cases which, while not "address[ing] similar circumstances," that made it "sufficiently clear" that probable cause would be lacking. *Id.* (citations omitted). As for the latter alternative, "a general constitutional rule already identified in the decisional law may apply with

---

[9] There is no indication that, if the invalid-warrant test were used, *supra* n.4, the result would be any different. The parties do not state that the officers possessed, or that the warrant application contained, any additional evidence. The Complaint confirms that the application was primarily based on the statements from Romelus. (Compl. at 7, 28.) *See Goodwin*, 836 F.3d at 327.

11

obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002); *accord Taylor v. Riojas,* 141 S. Ct. 52, 53–54 (2020) (per curiam) (no qualified immunity for corrections officers who forced an inmate to sleep in a sewage covered cell because, while there were no sewage cases, "no reasonable correctional officer could have concluded that . . . it was constitutionally permissible to house [an inmate] in such deplorably unsanitary conditions"); *Williams v. Bitner,* 455 F.3d 186, 191 (3d Cir. 2006).

At the outset, the Third Circuit has held that the general right to be free from arrest or prosecution absent probable cause was clearly established by 1994. *Orsatti v. N.J. State Police,* 71 F.3d 480, 483 (3d Cir. 1995) (arrest); *Gallo v. City of Philadelphia,* 161 F.3d 217, 220 n.4 (3d Cir. 1998) (prosecution). Moreover, the Third Circuit seems to have held that that right is sufficiently specific for qualified immunity purposes. *Andrews,* 853 F.3d at 705.

There is some tension, however, between *Andrews* and the Supreme Court's recent admonitions that "[g]iven [probable cause's] imprecise nature," a prior case with similar circumstances is generally, if not always, necessary to put an officer on notice. *Wesby,* 138 S. Ct. at 590; *see also Jones v. Clark County,* 959 F.3d 748, 774 (6th Cir. 2020) (Murphy, J., concurring in part and dissenting in part) (arguing that the right to be free from detention without probable cause is too general under *Wesby*). I therefore examine the issue further.

Three specific principles put Detective Furda on notice that prosecuting Mr. Dorval would not satisfy the probable cause standard:

First, it was clearly established in 1994 that coerced or fabricated statements could not support probable cause. The *Halsey* court explained that "[i]nvestigators . . . should have known [before 1985] that they would be violating a defendant's constitutional rights if they knowingly used fabricated evidence to bring about his prosecution." 750 F.3d at 296. Likewise, in 1992, the Third Circuit explained that "proceed[ing] on manufactured or coerced

12

evidence" was unconstitutional. *Kulwicki v. Dawson*, 969 F.2d 1454, 1468 (3d Cir. 1992). As explained earlier, the Complaint alleges that Romelus's statements were coerced and possibly suggested by Detective Furda. It was clearly established that Detective Furda could not rely on such statements.

Second, though less important, factor 1 is reinforced by the general, clearly established principle that incriminating statements by an accomplice or suspect are not reliable. The Supreme Court had affirmed that principle since 1965. *Douglas v. Alabama*, 380 U.S. 415, 419 (1965); *Bruton v. United States*, 391 U.S. 123, 136 (1968); *Lee v. Illinois*, 476 U.S. 530, 541 (1986).[10] Based on such precedent, Detective Furda—even if he were not personally responsible for the unreliability of Romelus's statements, as alleged—should have known that they merited the most cautious scrutiny and would require corroboration.[11]

Third, it was clearly established that probable cause could not be based on generalities such as race/ethnicity and the ownership of a particular make and model of car. In 1977, the Third Circuit explained that a few generic descriptors are insufficient for probable cause. *United States ex rel. Wright v. Cuyler*, 563 F.2d 627, 630 (3d Cir. 1977). The court explained that, on one end of the spectrum, race and age would not be enough; on the other, however, "race, height, weight, color of hair, distinctive type of hair styling, precise color of clothing, and [the fact that] the suspects were apprehended near the scene of the crime one night after it had occurred" would suffice. *Id.* The court also

---

[10] True, these cases did not arise in the probable-cause context. But the Third Circuit has explained that a principle need not arise in the same legal context as the present case to be considered clearly established. *See Halsey*, 750 F.3d at 295. These are bedrock principles and would be relevant to the determination that the officer acted unreasonably even in the absence of on-point precedent.

[11] Detective Furda urges that Romelus be considered an informant, rather than an accomplice, and hence more reliable. (Reply at 3–4.) That argument presents an issue of fact; in Mr. Dorval's version, Romelus was accused in connection with this offense, but was downgraded from accomplice to informant *as a result* of his shifting the blame to Mr. Dorval. In any event, a statement from an unreliable, uncorroborated informant without an adequate basis for his knowledge could not support probable cause. *See Gates*, 462 U.S. at 233 (decided in 1983).

13

noted that finding a person who matched the description in close geographic and temporal proximity to the crime would be key. *Id.* Ten years later, the court in *Edwards v. City of Philadelphia* affirmed that descriptions mainly based on race were insufficient. 860 F.2d 568, 571 n.2 (3d Cir. 1988). *Edwards* is further notable because *Kithcart* (the most on-point case, albeit decided four years too late for Mr. Dorval) relied on *Edwards* to hold that "it is clear" that relying on race and a car description was insufficient. 134 F.3d at 531–32. The case law made it clear, then, that prosecutions could not permissibly be brought based on a match between the accused and a description of their race and car, with no sufficient temporal or geographic connection to the crime, as here.

All said, case law by 1994 had identified one probable cause factor that was wholly invalid, and two that were at best dubious: (1) coerced statements, (2) accusations from an accomplice, and (3) vague descriptions of the perpetrator. Detective Furda relied on all three—and nothing else. Given such case law, it should have been apparent that probable cause was lacking.

The Complaint, I find, has enough merit to require that the case go forward. I so rule without prejudice to a renewed application seeking qualified immunity based on factual submissions by the parties, at the proper time. In short, the question of whether the officer should clearly have known that probable cause was lacking presents, at best, a factual issue. For the present, the motion to dismiss is denied to the extent it seeks qualified immunity from the claims in Counts 5 and 6.[12]

---

[12] A final note on qualified immunity: Even if Detective Furda were entitled to immunity on the claim discussed above, it is not clear that he would be entitled to qualified immunity on *all* claims. Recall that the Complaint alleges violations of multiple rights. (Compl. at 51–52.) Detective Furda has not attempted to argue specifically as to those violations. The rights that come into play based on a wrongful prosecution and conviction have given rise to a rich, complex area of the law. *See generally Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371 (E.D. Pa. 2018) (analyzing the complexities of many of the claims asserted here). Despite this richness, Detective Furda asks for dismissal of all claims without even mentioning the contours of those constitutional rights. Instead, he argues generally that, *whatever* rights are at

14

### B. Official-Capacity Claims

Mr. Dorval asserts § 1983 and NJCRA claims against Detective Furda in his official capacity as well as his individual capacity. However, such suits for damages are not permitted against state actors in their official capacities. *Downey v. Pa. Dep't of Corrs.*, 968 F.3d 299, 309–10 (3d Cir. 2020) (§ 1983); *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 856 (3d Cir. 2014) (NJCRA). As a result, to the extent Counts 5 and 6 are asserted against Detective Furda in his official capacity, they are dismissed.

### C. Malicious Prosecution Claim

Mr. Dorval brings a common-law malicious prosecution claim (Count 7) (Compl. at 53–56), which Detective Furda moves to dismiss because (1) malice is not alleged, and (2) he is immune under N.J. Stat. Ann. § 59:3-8 (Mot. at 18–19).

On his first argument, Detective Furda is incorrect. True, a malicious prosecution claim requires, among other things, that the prosecution was motivated by malice. *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (N.J. 2009). But "malice may be inferred from want of probable cause." *Brunson v. Affinity Fed. Credit Union*, 972 A.2d 1112, 1120 (N.J. 2009). At least at the pleading stage, adequate allegations that probable cause was lacking suffice to raise an inference that the action was motivated by malice. *Crane v. Sussex Cnty. Prosecutor's Office*, Civ. No. 08-1641, 2009 WL 192567, at *7 (D.N.J. Jan. 27, 2009). Put differently, one can infer that if an action was commenced without probable cause, then the defendant's "primary purpose was one other than bringing the plaintiff to justice." *Bartlebaugh v. City of Camden*, Civ. No. 05-0121, 2007 WL 4415066, at *2 (D.N.J. Dec. 13, 2007). Accordingly, because

---

stake here, there is no factually on-point case in any context. Here, the government paints with too broad a brush; for example, the Third Circuit has recognized rights in similar contexts *and* held that "[a]nalogous precedent" should have informed defendants of them. *Halsey*, 750 F.3d at 295–96. Something more substantial in the way of argument would be required to secure such a broad-based immunity.

15

the Complaint alleges that probable cause was lacking (Section III.A.1, *supra*), I can infer malice for purposes of this motion to dismiss.

On his second argument, Detective Furda is also incorrect. True, the New Jersey Tort Claims Act provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial . . . proceeding within the scope of his employment." N.J. Stat. Ann. § 59:3-8. But the Act provides that an employee is still liable if "his conduct . . . constituted . . . actual malice or willful misconduct." *Id.* § 59:3-14(a). This latter section forecloses immunity here for two reasons. First, the Complaint pleads "willful misconduct," namely that Detective Furda coerced the Romelus statements. *See Alston v. City of Camden*, 773 A.2d 693, 185 (N.J. 2001) ("willful misconduct" is more than "simple negligence" but less than "intentional infliction of harm"). Second, because a malicious-prosecution claim requires malice, and I can at least infer malice, it would be improper to dismiss at this stage. *Langford v. Gloucester T'ship Police Dep't*, Civ. No. 16-1023, 2016 WL 7130912, at *3 (D.N.J. Dec. 7, 2016).

For these reasons, the motion to dismiss is denied as to Count 7.

### D. § 1985(3) Claim

Mr. Dorval brings a § 1985(3) conspiracy claim against Detective Furda and Officer Koczur (Count 8) (Compl. at 56–58), which Detective Furda moves to dismiss as insufficiently pleaded (Mot. at 14–16). To state a § 1985(3) claim, a plaintiff must allege, among other things, "(1) a conspiracy; (2) for the purpose of depriving . . . any person . . . the equal protection of the laws." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citation omitted).

Detective Furda argues that the second element is not met. (Mot. at 16.) That element requires the plaintiff to allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Farber*, 440 F.3d at 135 (citation omitted). The Complaint alleges that Detective Furda and Officer Koczur's wrongful investigation and prosecution were motivated by Mr. Dorval's "Haitian ethnicity." (Compl. at 59.) But as the

16

Complaint acknowledges, Detective Furda and Officer Koczur took interest in Mr. Dorval because witnesses had identified the perpetrators as Haitian. (*Id.* at 57.) There is no impermissible discrimination when race is confined to its proper role as a physical description, like height, weight, or eye color. When law enforcement learns from a witness that a perpetrator was a member of a particular race, it is permissible to use that fact in the investigation. *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2018); *Pinkney v. Meadville*, No. 1:19-cv-167, 2020 WL 1667241, at *12 (W.D. Pa. Apr. 3, 2020), *adopted in relevant part*, 2020 WL 1984721 (W.D. Pa. Apr. 27, 2020). As a result, Mr. Dorval has not alleged that any conspiratorial acts were motivated by racial animus.

For these reasons, Count 8 is dismissed.

## IV.  CONCLUSION

For the reasons set forth above, the motion to dismiss is denied in part and granted in part. It is denied to the extent it seeks dismissal of (1) the individual-capacity § 1983 and NJCRA claims (Counts 5 and 6), and (2) the malicious prosecution claim (Count 7). It is granted to the extent it seeks dismissal of (1) the official-capacity § 1983 and NJCRA claims (Counts 5 and 6), and (2) the § 1985 conspiracy claim (Count 8).

A separate order will issue.

Dated: January 25, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**

17